UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

SHEILA MORALES,

     Plaintiff

v.                                          CIVIL ACTION NO. 2:05-0509

BRENT ROBINSON, individually
and in his official capacity
as a correctional officer of the
Southwestern Regional Jail; THE
WEST VIRGINIA REGIONAL JAIL AND
CORRECTIONAL FACILITY AUTHORITY,
a corporate body and governmental
instrumentality; and JOHN DOE,
unknown person or persons,

     Defendants

<u>MEMORANDUM OPINION AND ORDER</u>

     Pending before the court are the following motions: (1)
defendant Brent Robinson's motion, filed March 24, 2006, seeking
dismissal of plaintiff's complaint as barred by the statute of
limitations; (2) defendant West Virginia Regional Jail and
Correctional Facility Authority's motion, also filed March 24,
2006, similarly seeking dismissal of plaintiff's claims on
statute of limitations grounds; and (3) defendant Brent
Robinson's motion, filed March 27, 2006, again seeking dismissal

1

of plaintiff's complaint as time barred.[1]

I.

After a jury trial held December 2 and 3, 1997, in the Circuit Court of Fayette County, West Virginia, plaintiff was found guilty of the felony offense of child abuse by a parent resulting in serious bodily injury.  (Sentencing Report, attached as Ex. 1 to Pl.'s. Resp. Memo.)  On November 10, 1998, plaintiff was sentenced to a period of incarceration of not less than two years nor more than ten years.  (Id.)  Plaintiff was originally incarcerated in a jail located in Beckley, West Virginia.  On July 13, 1999, plaintiff was transferred to the Southwestern Regional Jail in Logan, West Virginia, where she would remain until March 24, 2000.  (Pl.'s. Resp.  Memo. at 1-2.)

While incarcerated at the Southwestern Regional Jail, plaintiff alleges that she was sexually harassed, sexually abused, and sexually assaulted by defendant Brent Robinson who worked as a correctional officer at the jail.  (Compl. ¶¶ 5, 7.) Plaintiff represents that Robinson is employed by defendant West Virginia Regional Jail and Correctional Facility Authority

------

[1] The motions to dismiss and accompanying memoranda filed by Robinson on March 24, 2006, and March 27, 2006, are identical.

2

("WVRJA").  (Id. ¶ 5.)  In addition to her general allegations of sexual misconduct by Robinson, plaintiff specifically asserts that she was sexually assaulted by Robinson on September 7, 1999. (Id. ¶ 44, Pl.'s Resp. Memo. at 2.)  No other specific allegations of sexual misconduct by Robinson are found in plaintiff's complaint.[2]

Plaintiff maintains that no meaningful investigation of the September 7, 1999, sexual assault occurred despite her giving a seven-page recitation of the assault to a jail administrator and a lieutenant on November 15, 1999.  (Compl. ¶ 45.)  Plaintiff further alleges that the reported sexual assault was never channeled through the WVRJA's "chain of command."  (Id.)

According to plaintiff, at an unidentified time in November of 1999, she was escorted from her jail cell into an interview room where she met with an individual who identified himself as the prosecuting attorney of Logan County, West Virginia.  (Id. ¶ 56.)  The complaint refers to that individual as John Doe and names him as a defendant under that name. Plaintiff represents that during the interview,

---

[2] Plaintiff's response brief repeatedly refers to plaintiff's "rape" by Robinson on September 7, 1999.  The brief makes no mention of any other sexual misconduct by Robinson.

3

> She was compelled to recount the alleged rape with
> Defendant Doe whom she believed to be the prosecuting
> attorney of Logan County.  Defendant Doe assured the
> plaintiff that the rape should be properly 'handled'
> by the appropriate legal authorities and that her
> legal rights would be protected.  Plaintiff relied on
> these representation on a continued basis until she
> determined, in late 2004, that the 'prosecuting
> attorney' was an imposter and a fraud.  During the
> intervening period, Plaintiff reasonably relied on
> these representations that her legal interests were
> being fully protected by Defendant Doe and legal
> authorities in Logan County, the situs of the sexual
> assault.  Defendant Doe was shrouded in the mantle of
> full authority guaranteeing that the sexual assault
> would be fully addressed by legal authorities.  In
> view of the totality of the relevant circumstances,
> Plaintiff's reliance was reasonable.  There existed a
> clear rational basis for plaintiff's belief and
> reliance.  By way of educational background,
> plaintiff completed the ninth grade.

(Id.)  Plaintiff does not allege that she made any additional

efforts to contact the purported prosecuting attorney after the

November, 1999, interview, nor does plaintiff assert that the

purported prosecuting attorney had any further contact with her

after the interview.

On March 24, 2000, plaintiff was transferred from the

Southwestern Regional Jail.  (Pl.'s. Resp.  Memo. at 2.)

Although it is unclear exactly where plaintiff served the

remainder of her sentence, plaintiff was ultimately released from

custody on October 16, 2003, when she was discharged from a jail

in Grafton, West Virginia.  (Id.)

4

Plaintiff instituted this action on June 24, 2005, asserting (1) claims against the defendants under 42 U.S.C. § 1983 for their alleged violation of the Fourth, Eighth, Ninth and Fourteenth Amendments of the United States Constitution; (2) claims against the defendants for depriving plaintiff of rights and privileges and immunities protected by the West Virginia Constitution, and the "statutes and common laws of this State;" (3) claims against the defendants for intentional infliction of emotional distress; (4) a claim against Robinson for outrageous conduct; (5) claims against the defendants for the violation of plaintiff's right to privacy; (6) claims against the WVRJA for negligently employing, supervising, and training Robinson; (7) a claim against the WVRJA for negligently failing to protect plaintiff from harm and the unlawful conduct of defendants Doe and Robinson; (8) state common law claims against defendants Doe and Robinson including: sexual harassment and unwelcome solicitations for sexual favors, unwelcome touching of her person in a sexual manner, civil battery, civil assault, sexual assault, and negligence; (9) claims that the conduct of Robinson violated the public policy of the state of West Virginia as reflected in the provisions of W.Va. Code §§ 61-8B-10, 61-2-9; (10) a claim that the defendants engaged in a conspiracy with the intent to

5

deny plaintiff certain rights guaranteed by the Constitutions of the United States and West Virginia, federal statutes, state statutes, and the common law of West Virginia; and (11) a claim that various employees of the WVJRA negligently trained, retained, and failed to supervise the "defendants."

With respect to plaintiff's conspiracy claim she alleges, among other things, that (1) no meaningful investigation of Robinson's sexual assault on plaintiff occurred; (2) jail officials and Robinson failed to disclose certain relevant facts relating to the alleged sexual assault on plaintiff during discovery in Hager, et al. v. Robinson, et al., Civil Action Number 2:03-0094 ("Hager action");[3] and (3) Robinson and Doe, at an unidentified time, concealed logs maintained by the Southwestern Regional Jail for an eleven-day period in 2001, shortly after Robinson abused the Hager plaintiffs. (Compl. ¶¶ 45, 48, 52.)

---

[3] The Hager action, instituted January 10, 2003, in the Circuit Court of Logan County, West Virginia, was removed to this court on February 3, 2003. In Hager, four female inmates incarcerated at the Southwestern Regional Jail alleged that Robinson sexually abused them in 2001. Counsel for plaintiffs in the Hager action is also counsel for plaintiff Morales and identified Morales as a fact witness in the Hager action. The parties in the Hager action ultimately resolved their dispute without need of a jury trial.

Plaintiff, anticipating the defendants' assertion of a statute of limitations defense, further states that

> [D]uring the intervening period from September, 1999
> until December, 2004. [sic]  The Discovery Rule is
> applicable to certain relevant facts, therefore, all
> pertinent statutes of limitations must be deemed
> tolled in view of the legal doctrines of equitable
> tolling, equitable estoppel, and fraudulent
> concealment of plaintiff's claims and causes of
> action.  The events described above grossly impeded
> plaintiff's ability to seek legal assistance as to
> her potential claims, causes of action and civil
> remedies.  The plaintiff was, in effect, estopped
> from pursuing any potential cause of action as a
> proximate result of the deceit and fraudulent acts
> on the part of defendants, jointly and severally.
> The plaintiff has exercised reasonable diligence in
> pursing [sic] her claims, causes of action and civil
> remedies despite the conspiratorial acts of
> Defendants, jointly and severally.

(Compl. ¶ 57.)


In support of their motions to dismiss plaintiff's claims, defendants Robinson and the WVRJA contend that the statute of limitations operates to bar the entirety of plaintiff's claims.  More specifically, they observe that (1) plaintiff's claims arise out of an alleged sexual assault that occurred on September 7, 1999, (2) plaintiff knew on that day she was assaulted and had suffered an injury and (3) plaintiff also knew on that same day the identity of the alleged assailant.  The WVRJA maintains that September 7, 1999, the date the sexual assault occurred, and November 15, 1999, the date the assault was

7

reported, "establish a specific date in which the plaintiff knew, or should have known, of the alleged conduct against her and the identity of the person against whom she raises the allegations." Both defendants further posit that the discovery rule is not applicable on the facts presented and that plaintiff's alleged reliance on an unidentifiable prosecutor to pursue her civil claims was unreasonable.

In her response, plaintiff asserts that Robinson threatened bodily harm to plaintiff if she disclosed the facts of her rape to anyone and "this was an effective deterrent." Plaintiff further suggests that because Robinson's father held a high ranking position in the WVRJA, Robinson's threats were credible and he "affirmatively obstructed Morales from entering into any civil action while within the confines of the custody of the State of West Virginia [until she was released on October 16, 2003]."

Consistent with the allegations in her complaint, plaintiff also insists her reliance on jail authorities to protect her civil rights was reasonable and "[s]he did not discover until the fall of 2004 everything she believed was being done arising from her rape was nothing more than the Defendants' conspiracy to 'sweep everything under the rug.'" In her response brief,

plaintiff explains that until she met with her counsel in October of 2004, she "firmly believed that her allegations had been taken seriously and were being handled in the proper manner."

While little analysis is provided, plaintiff also references the discovery rule, equitable tolling, equitable estoppel, and the doctrines of fraudulent concealment and obstruction of prosecution. Although it is not entirely clear, plaintiff further appears to posit that the alleged conspiracy was ongoing and this ongoing conspiracy operates to toll the statute of limitations.

II.

A motion to dismiss for failure to state a claim should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in the light most favorable to the plaintiff. Mylan Laboratories, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993), cert. denied, 510 U.S. 1197 (1994) (citations omitted); see also Brooks v. City of Winston-Salem, 85 F.3d 178, 181 (4th Cir. 1996).

9

III.

A.   Statute of Limitations

No federal statute of limitations specifically applies to § 1983 actions; instead, the applicable time period must be borrowed from the analogous state statute of limitations. National Advertising Co. v. City of Raleigh, 947 F.2d 1158, 1161 (4th Cir. 1991). "Where state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions." Owens v. Okure, 488 U.S. 235, 249-50 (1989) (internal citations omitted).  The question of whether the statute of limitations is tolled is likewise resolved by reference to state law.  Board of Regents v. Tomanio, 446 U.S. 478 (1980).  In accordance with West Virginia Code § 55-2-12(b), the applicable statute of limitations for § 1983 actions is two years.  Bell v. Board of Education of County of Fayette, 290 F. Supp.2d 701, 709 (S.D. W.Va. 2003); W. Va. Code § 55-2-12(b) ("Every personal action for which no limitation is otherwise prescribed shall be brought . . . within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries[.]").

10

With respect to plaintiff's state law personal injury claims the statute of limitations is likewise two years.  Courtney v. Courtney, 437 S.E.2d 436 (W. Va. 1993) (claims for infliction of emotional distress, assault and battery are governed by the two-year limitations period set forth in West Virginia Code § 55-2-12(b)); Harrison v. Davis, 478 S.E.2d 104, 108, fn. 8 (W. Va. 1996) (observing that "[p]ersonal injury actions are governed by the general tort [two-year] statute of limitations found in W. Va. Code 55-2-12(b)."].  Plaintiff's invasion of privacy claim is subject to a one-year statute of limitations.  Slack v. Kanawha County Housing and Redevelopment Authority, 423 S.E.2d 547, 551 (W. Va. 1992).

## B.  Accrual

The United States Supreme Court has recently recognized that "the accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law." Wallace v. Kato, -- U.S. --, 127 S.Ct. 1091, 1095 (2007).  A claim accrues when the affected party knew or should have known of the injury that is the basis of the action.  National Advertising, 947 F.2d at 1161-62.  With respect to plaintiff's state law tort claims, under West Virginia law those claims generally accrue when

11

the tort occurred.  Merrill v. West Virginia Dept. of Health and
Human Res., 632 S.E.2d 307, 312 (W. Va. 2006).

Here, plaintiff's own allegations establish that she
knew of her injury on September 7, 1999, the same date the
underlying tort occurred.  Accordingly, both plaintiff's § 1983
and state law claims accrued at that time and the statute of
limitations began to run.  Inasmuch as plaintiff's claims were not
brought within the time frame prescribed by the statute of
limitations, they are barred absent an excuse for plaintiff's
delay.[4]

C.  The Discovery Rule

The parties disagree about the applicability of the
discovery rule to the facts of this case.  The court looks to West
Virginia law to determine whether the statute of limitations is
tolled with respect both to plaintiff's § 1983 claims and her
state law personal injury claims.  Board of Regents, 446 U.S. at
486-88.  Generally, the statute of limitations begins to run when
the tort occurs; however, under the discovery rule the statute of
limitations is tolled until a claimant knows or by reasonable

_____

[4] Plaintiff's brief makes no mention of the applicable
statute of limitations; rather, it focuses entirely on whether
her untimely filing should be excused.

diligence should know of his claim.  Cart v. Marcum, 423 S.E.2d 644, Syl. pt. 1 (W. Va. 1992).  Two versions of the discovery rule have been developed in West Virginia.  Merrill v. West Virginia Dep't of Health and Human Res., 632 S.E.2d 307, 312 (W. Va. 2006).

The "more lenient" version is stated in Gaither v. City Hospital, Inc., 487 S.E.2d 901 (W. Va. 1997).  In Gaither, the West Virginia Supreme Court observed that

> In tort actions, unless there is a clear statutory prohibition to its application, under the discovery rule the statute of limitations begins to run when the plaintiff knows, or by the exercise of reasonable diligence, should know (1) that the plaintiff has been injured, (2) the identity of the entity who owed the plaintiff a duty to act with due care, and who may have engaged in conduct that breached that duty, and (3) that the conduct of that entity has a causal relation to the injury.

Id. at 909.  Under the allegations of her complaint, plaintiff (1) knew she was injured on September 7, 1999, the date of her alleged sexual assault, and has not alleged or identified any other injuries beyond that date; (2) knew the identity of the person who injured her, namely, Brent Robinson; (3) was aware that Robinson had caused her injury; and (4) knew, or should have known, that Robinson was a WVRJA employee.  Accordingly, the statute of limitations began to run as to Robinson and the WVRJA on September 7, 1999, and the discovery rule as stated in Gaither does not apply.

13

Under the other, more stringent version of the discovery rule

> Mere ignorance of the existence of a cause of action or of the identity of the wrongdoer does not prevent the running of the statute of limitations; the "discovery rule" applies only when there is a strong showing by the plaintiff that some action by the defendant prevented the plaintiff from knowing of the wrong at the time of the injury.

Cart v. Marcum, 423 S.E.2d 644, Syl. pt. 3 (W. Va. 1992).

The discovery rule articulated in Cart is also of no assistance to plaintiff. Plaintiff has not alleged that the defendants prevented the plaintiff from knowing of the wrong at the time of her sexual assault. Indeed, for this rule to apply here plaintiff must allege that defendants hid the alleged sexual assault of plaintiff from plaintiff. Such an allegation is not present in plaintiff's complaint and seems illogical on these facts.

In view of the foregoing, the court finds that neither version of the discovery rule applies to the alleged facts of this case.

D.  Equitable Modification of the Statute of Limitations

The West Virginia Supreme Court has recognized two types of equitable modification of the statute of limitations.

14

<u>Independent Fire Company No. 1 v. West Virginia Human Rights</u>
<u>Commission</u>, 376 S.E.2d 612, 614 (W. Va. 1988).  The first is
equitable tolling "which often focuses on the plaintiff's excusable
ignorance of the limitations period and on lack of prejudice to the
defendant" and the second is equitable estoppel "which usually
focuses on the actions of the defendant."  <u>Id.</u> (citation omitted).
Addressing estoppel generally, the West Virginia Supreme Court has
observed that it "applies when a party is induced to act or to
refrain from acting to her detriment because of her reasonable
reliance on another party's misrepresentation or concealment of a
material fact."  <u>Ara v. Erie Ins. Co.</u>, 387 S.E.2d 320, Syl. Pt. 2
(W. Va. 1989).  The court has further warned that "[t]he doctrine
of estoppel should be applied cautiously, only when equity clearly
requires that it be done."  <u>Samsell v. State Line Development Co.</u>,
174 S.E.2d 318, Syl. Pt. 7 (W. Va. 1970).

       With respect to defendant Robinson, plaintiff suggests
that he should be equitably estopped from asserting the statute of
limitations because of

          [H]is unyielding and unrelenting reminders and promises
          of bodily harm and/or injury should [plaintiff] choose
          to disclose any fact or circumstances of her rape to
          anyone.  This threat remained a useful tool for
          controlling Morales throughout the duration of her
          incarceration.  As Defendant Robinson's father,
          Sergeant Clarence Robinson, retained his high ranking
          position of authority within the WVJRA this
          continuously remained a viable threat in the mind of
          Plaintiff.

(Pl.'s Resp. Memo. at 14.)  Any mention of threats by Robinson is notably absent from the detailed allegations of plaintiff's twelve-page complaint.  Nevertheless, assuming this omitted allegation is true, plaintiff's allegations in her complaint conclusively establish that she was not deterred by Robinson's alleged threats.  More specifically, plaintiff's complaint alleges that approximately two months after Robinson sexually assaulted her, she gave a detailed seven-page account of Robinson's sexual assault to jail personnel.  Additionally, plaintiff further asserts that she again recounted the sexual assault to a purported prosecutor.  (Compl. ¶¶ 45, 56.)  Robinson's alleged threats similarly should not have deterred plaintiff from instituting a civil action against Robinson and the court finds that the suggestion that Robinson's alleged threats intimidated plaintiff and ultimately delayed her institution of this civil action, a suggestion that stands in stark contrast to plaintiff's allegations, will not serve to equitably estop Robinson from asserting the statute of limitations defense.[5]

---

[5] To the extent plaintiff may be suggesting the statute of limitations should be tolled because she was incarcerated, such a suggestion is unavailing inasmuch as incarceration will not toll the statute of limitations.  Craigo v. Marshall, 331 S.E.2d 510, 513 (W. Va. 1985) (addressing prisoners' civil claims and observing that "there is no tolling provision in our statute of limitations with regard to a prisoner's claim during the period of his incarceration [and] [i]t is generally held absent specific

16

The court next turns to plaintiff's contention that her alleged contact with a purported prosecutor in November of 1999 serves to toll the statute of limitations until 2004 when plaintiff was informed by her counsel that she was the victim of a fraudulent scheme to mislead her.  Under the doctrine of estoppel, plaintiff must demonstrate that she refrained from instituting a civil action within the time fixed by the statute of limitations because of her reasonable reliance on the purported prosecutor's misrepresentation.  Ara, 387 S.E.2d 320 at Syl. Pt. 2.  Plaintiff insists that she "reasonably relied" on the purported prosecutor's representation that her "legal interests were being fully protected."  (Compl. ¶ 56.)

The court observes that plaintiff does not allege in her complaint or briefing that (1) the purported prosecutor agreed to represent her in a civil action arising out of the alleged sexual assault, (2) she attempted to contact the purported prosecutor at any point after November of 1999, or (3) the purported prosecutor had any further contact with her after November of 1999.  Contrary to plaintiff's contention, she cannot reasonably rely on a single

---

provisions to the contrary in a tolling statute, there is no exemption because of imprisonment from a statute of limitations.") (citation omitted).

contact with a purported prosecuting attorney during which it is not alleged that an agreement for representation in a civil action was reached.[6] Even assuming this isolated contact did in fact take place, as the court must under the motion to dismiss standard, it is insufficient to toll the statute of limitations on plaintiff's civil claims for some four years. Plaintiff's alleged reliance on the sole contact with a purported prosecutor, combined with both the absence of subsequent contact from the purported prosecutor and any attempt by plaintiff to contact the purported prosecutor, was unreasonable as matter of law. The court accordingly finds that plaintiff's allegations will not serve to justify the use of the doctrine of estoppel, a doctrine the West Virginia Supreme Court has warned "should be applied cautiously." Samsell, 174 S.E.2d 318, Syl. Pt. 7; see also Hedges v. United States, 404 F.3d 744, 751 (3d Cir. 2005) (observing that "[e]quitable tolling is an extraordinary remedy which should be extended only sparingly.").

---

[6] In her brief plaintiff suggests that it was reasonable for her to rely on the purported prosecuting attorney's representations inasmuch as county prosecutors in West Virginia often maintain civil practices. Plaintiff's complaint, however, clearly states that the apparent impostor appeared in the capacity of a prosecuting attorney. There are no allegations that she believed the purported prosecuting attorney to be a part-time civil practitioner who was handling her civil claims. The court further observes that plaintiff had first-hand knowledge of the primary role of a county prosecuting attorney in pursuing criminal actions insofar as she was convicted of a felony in a state circuit court after a jury trial.

E.   <u>Fraudulent Concealment/Obstruction of Prosecution</u>

Plaintiff further makes reference to the fraudulent concealment doctrine and obstruction of prosecution under W. Va. Code § 55-2-17.  That statute provides in pertinent part

> Where any such right as is mentioned in this article shall accrue against a person . . . if such person shall . . . by . . . concealing himself [or herself], or by any other indirect ways or means, obstruct the prosecution of such right, . . . the time that such obstruction may have continued shall not be computed as any part of the time within which the said right might or ought to have been prosecuted.

Addressing the application of this statute, the West Virginia Supreme Court observed that

> [T]he general statute of limitations, W.Va.Code, 55-2-12, as amended, is tolled, with respect to an undiscovered wrongdoer, by virtue of the fraudulent concealment or obstruction of prosecution doctrine embodied in W. Va. Code, 55-2-17, as amended, when an action is brought timely against the known wrongdoer(s) and, despite the due diligence of the injured person to discover the identity of all the wrongdoers, the identity of one or more of them is hidden by words or acts constituting affirmative concealment, that is, a "cover-up."

<u>Sattler v. Bailey</u>, 400 S.E.2d 220, 229 (W. Va. 1990).  The court also observed that "a plaintiff may not postpone the filing of an action until he or she knows the identity of every defendant." <u>Id.</u> at 228 (citation omitted).

Plaintiff's reliance on the fraudulent concealment and

19

obstruction of prosecution doctrines is misplaced. Here, plaintiff did not timely bring an action against the known wrongdoers, namely, Robinson and the WVRJA. Accordingly, her lack of knowledge of the identity of the Doe defendants will not serve to toll the statute of limitations with respect to her claims against known defendants.

Moreover, as the West Virginia Supreme Court has made clear, an injured party is required to exercise "due diligence." Plaintiff has failed to plead any facts that would indicate her due diligence in pursuing her civil claims with the purported prosecutor. Again, plaintiff does not allege that she attempted to contact, or was contacted by, the purported prosecutor beyond November 1999. Absent pleading sufficient facts, plaintiff's mere incantation that she "exercised reasonable diligence in pursing [sic] her claims" is insufficient. Scherer, 840 F.2d at 441 (plaintiff's general statement that he still seeks information, without particular facts, does not demonstrate concealment such that the statute of limitations will be tolled).

F. Conspiracy Allegations

The position, opaquely advanced by plaintiff, that the continuance of a conspiracy beyond the date when injury or damage

20

occurs extends the statute of limitations has been rejected by courts considering the issue in the context of a § 1983 action. <u>LRL Properties v. Portage Metro Housing Authority</u>, 55 F.3d 1097, 1106 (6th Cir. 1995). The rationale is that "[i]njury and damage in a civil conspiracy action flow from the overt acts, not from 'the mere continuance of a conspiracy.'" <u>Kadar Corp. v. Milbury</u>, 549 F.2d 230, 234 (1st Cir. 1977) (internal citation omitted). Accordingly, the statute of limitations runs separately from each overt act that is alleged to cause damage to the plaintiff. <u>Lawrence v. Acree</u>, 665 F.2d 1319, 1324 (D.C. Cir. 1981) (per curiam). It appears that every circuit court of appeals to have addressed this question adheres to this view. <u>LRL Properties v. Portage Metro Housing Authority</u>, 55 F.3d 1097; <u>Scherer v. Balkema</u>, 840 F.2d 437 (7th Cir. 1988); <u>Kichline v. Consolidated Rail Corp.</u>, 800 F.2d 356, 360 (3d Cir. 1986); <u>Compton v. Ide</u>, 732 F.2d 1429, 1433 (9th Cir. 1984); <u>Singleton v. City of New York</u>, 632 F.2d 185, 192-93 (2d Cir. 1980); <u>Kadar Corp.</u>, 549 F.2d at 234-35; <u>Mizell v. North Broward Hospital Dist.</u>, 427 F.2d 468, 475 (5th Cir. 1970). As the court in <u>Scherer</u> explained "[a] rule allowing plaintiffs in civil conspiracy actions to recover only for overt acts alleged to have occurred within the applicable limitations period makes sense [inasmuch as] [t]he function of statutes of limitations is 'to pull the blanket of peace over acts and events which have

21

themselves already slept for the statutory period, thus barring
proof of wrongs imbedded in time-passed events.'"   840 F.2d at 440
(internal citation omitted).

        Here, the only overt act causing injury to plaintiff is
the alleged sexual assault on September 7, 1999.  Plaintiff's
complaint establishes that the alleged conspiracy did nothing to
delay plaintiff's awareness of her injury from the sexual assault
or the perpetrator of the sexual assault.  Insofar as plaintiff
was aware of her injury and the identity of the wrongdoer yet
failed to bring her claims within the time frame prescribed by the
statute of limitations it is of no consequence that a conspiracy
is alleged to have festered.[7]

G.   Alleged Questions of Fact

        Plaintiff contends that under West Virginia law
questions concerning the discovery rule and tolling of the statute

_____

        [7] Although not entirely clear, it appears plaintiff is
alleging a § 1983 conspiracy, and federal law governs a
determination of the accrual of such a claim.  See generally
Wallace, 127 S.Ct. at 1097.  Even if plaintiff's complaint could
be read to assert a separate state common law conspiracy claim,
the accrual of which would be governed by reference to state law,
this claim is nonetheless barred as well inasmuch as West
Virginia similarly recognizes that where a plaintiff claims fixed
acts by a defendant that do not involve a continuing wrong, and
even where the tort involves a continuing wrong or repeated
injury, a cause action accrues at the date of the last injury.
Miller v. Lambert, 467 S.E.2d 165 (W. Va. 1995).

of limitations are questions of fact to be resolved by the jury.
The court acknowledges that West Virginia has recognized that "the
statute of limitations does not begin to run until the injured
person knows, or by the exercise of reasonable diligence should
know, of the nature of his injury, and determining that point in
time is a question of fact to be answered by the jury."  Stemple
v. Dobson, 400 S.E.2d 561, Syl. Pt. 3 (W. Va. 1990).  This
statement of law, however, was made in the context of the
application of the discovery rule, where the injured person's
knowledge of the nature of the injury is at issue.  Here,
plaintiff's allegations conclusively establish that she knew both
the nature of her alleged injury and the person responsible for it
and, as the court has already found, the discovery rule is not
applicable to the facts of this case.

     Further, there is no prohibition on finding, as the
court has done, that a party's conduct is unreasonable as a matter
of law.  Indeed, the West Virginia Supreme Court has on at least
two occasions found extended delays to be unreasonable as a matter
of law.  In re Petition of Donley, 618 S.E.2d 458, 461 (W. Va.
2005) ("a delay of nearly three years, when no appeal is taken, is
unreasonable as a matter of law"); E. Shepherdstown Developers,
Inc. v. J. Russell Fritts, Inc., 398 S.E.2d 517, 520 (W. Va. 1990)

(over three years delay in performance of plaintiff's duties under a contract was unreasonable as a matter of law).  Plaintiff has simply failed to plead sufficient facts to demonstrate that the statute of limitations should be tolled and the court may dispose of this case under the motion to dismiss standard.

While the court recognizes that the allegations contained in plaintiff's complaint are of a quite serious and disturbing nature, the law nevertheless compels the timely institution of actions.  Any cause of action plaintiff may have had against the defendants is now barred by the statute of limitations.

IV.

It is accordingly ORDERED that the motions to dismiss of defendants Brent Robinson and the West Virginia Regional Jail and Correctional Facility Authority be, and they hereby are, granted, and plaintiff's claims are dismissed with prejudice.

The Clerk is directed to forward copies of this memorandum opinion and order to all counsel of record.

DATED: April 6, 2007

John T. Copenhaver, Jr.
United States District Judge

24